Filed 5/6/14  In re Bianca P. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re BIANCA P., a Person Coming Under the Juvenile Court Law. | H038999 (Santa Clara County  Super. Ct. No. JV38913) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>BIANCA P.,<br><br>        Defendant and Appellant. | |

The minor asserts that the juvenile court abused its discretion in imposing formal probation instead of informal supervision.  We conclude otherwise and will affirm the dispositional order.

PROCEDURAL BACKGROUND

On February 2, 2012, the People filed a juvenile delinquency petition (Welf. & Inst. Code, § 602) alleging, in two counts, that the minor, then 12-year-old Bianca P., had engaged in instances of misconduct against two other children that if committed by an adult would constitute felonies, namely, *nonforcible* lewd or lascivious acts on a child under age 14 (Pen. Code, § 288, subd. (a)).  A first amended petition, filed on March 27, replaced those allegations with two allegations that the minor engaged in *forcible* lewd or lascivious acts with the alleged victims (*id.*, subd. (b)).

The jurisdictional hearing was continued multiple times. On October 4, 2012, the minor filed a motion to be placed on informal supervision. On October 24, the juvenile court, having considered the motion at a hearing held on October 10, denied it and hinted that it was likely to impose formal probation without wardship. (We will describe the October 10 and October 24 proceedings in detail below.)

On November 1, a second amended petition was filed. That petition reiterated the first amended petition's two allegations of forcible lewd or lascivious conduct and added a third allegation of nonforcible lewd or lascivious conduct. That third allegation essentially realleged the two allegations from the initial petition, but presented them in a single count, not two. That same day, the juvenile court sustained the petition with regard to the nonforcible conduct allegation, dismissed the two forcible conduct allegations, and placed the minor on six months' formal probation without wardship. The November 1, 2012, proceedings evidently occurred as a result of post-disposition negotiations addressing the gravity of the minor's permanent juvenile delinquency record.

FACTS

Although the minor never formally admitted to the two charges of forcible lewd or lascivious conduct, the record shows that the parties at times were operating on the assumption that she had committed such conduct.

The second amended petition, the operative one here, alleged that the minor was between nine and 12 years old when she molested D.G., a girl younger than she. The second amended petition also alleged that the minor was between 11 and 12 years old when she molested I.G., another younger girl.

Although the minor is young, her sexual misconduct had precipitated official interventions. According to one police report, she sexually molested her then six-year-old female cousin I.G. around May or June of 2011. A combination of a prodding by the minor's younger sister and pornography on a laptop computer caused the minor to engage in sexual activity with I.G. The minor climbed on top of I.G. and asked, "Do you want to

do this?" I.G. said, "No." The minor said, "Okay, I'll do it." She rubbed I.G.'s pubic area with her fingers. I.G. said, "Stop it" and yelled for her grandmother. The minor closed the laptop computer and hid the device under the bed, then climbed back on top of I.G. until the grandmother arrived and spanked the minor. This was not the first time the minor had done similar things with I.G.

According to another police report, the minor engaged in similar sexual misconduct with another female cousin, D.G. D.G. is about four years younger than the minor. D.G. told police that incidents had occurred 10 to 20 times over one to two years. D.G.'s mother told a police investigator that D.G. told her the minor showed D.G. pornographic images, held D.G. down, and placed her hand under D.G.'s underwear, touching her pubic area. D.G. confirmed that the minor showed her pornographic images, got on top of her, and tried to kiss her.

When the police confronted her, the minor admitted to sexual misconduct and cried, saying she was scared. A psychiatrist's report took a positive view of the minor's psychological state and prospects and noted that her mother, on learning of her daughter's sexual misconduct, took steps to put an end to it, including password-protecting the computer in question, supervising her play with other children, and enrolling her in counseling. A psychologist took a dimmer view, opining that the minor suffered from severe depression with psychotic aspects—an assessment the psychiatrist disagreed with—and was at moderate risk of reoffending sexually, especially in an unstructured environment.

## DISCUSSION

The minor claims that the juvenile court abused its discretion under state law when it ordered her to be on formal probation for six months, rather than granting her informal supervision. We review this decision for abuse of discretion. (*In re Armondo A*. (1992) 3 Cal.App.4th 1185, 1189-1190; see *Derick B. v. Superior Court* (2009) 180 Cal.App.4th 295, 303-304.)

As noted, the juvenile court adjudged the minor to be eligible for formal probation with no imposition of wardship.[1] But it declined to place the minor on a program of informal supervision that would be less structured than formal probation, stating that the Welfare and Institutions Code disfavored informal supervision under the circumstances presented here and that the court was not inclined to disregard that stricture.

With respect to informal supervision, Welfare and Institutions Code section 654.2 provides in relevant part: ". . . the court may, without adjudging the minor a ward of the court and with the consent of the minor and the minor's parents or guardian, continue any hearing on a petition for six months and order the minor to participate in a program of supervision as set forth in Section 654 [i.e., informal supervision]. If the probation officer recommends additional time to enable the minor to complete the program, the court at its discretion may order an extension. Fifteen days prior to the final conclusion of the program of supervision undertaken pursuant to this section, the probation officer shall submit to the court a followup report of the minor's participation in the program. The minor and the minor's parents or guardian shall be ordered to appear at the conclusion of the six-month period and at the conclusion of each additional three-month period. If the minor successfully completes the program of supervision, the court shall order the petition be dismissed."

---

[1] "[A]fter the juvenile court makes a jurisdictional finding, one of its dispositional options is to place the minor on formal probation, either with wardship (Welf. & Inst. Code, § 727, subd. (a)(2)) or without wardship (Welf. & Inst. Code, § 725, subd. (a)). Probation without wardship means that, without making a wardship adjudication, the juvenile court 'place[s] the minor on probation, under the supervision of the probation officer, for a period not to exceed six months.' (Welf. & Inst. Code, § 725, subd. (a).) If the minor fails to comply with the probation conditions, the court may make a wardship adjudication. (Welf. & Inst. Code, § 725, subd. (a).)" (*In re C.Z.* (2013) 221 Cal.App.4th 1497, 1504.)

Informal supervision is disfavored in certain cases, as described in Welfare and Institutions Code section 654.3. As relevant here, section 654.3 provides: "No minor shall be eligible for the program of supervision set forth in Section 654 or 654.2 in the following cases, except in an unusual case where the interests of justice would best be served and the court specifies on the record the reasons for its decision: [¶] (a) A petition alleges that the minor has violated an offense listed in subdivision (b) of Section 707." Subdivision (b)(6) of section 707 of the Welfare and Institutions Code, in turn, lists a forcible lewd or lascivious act as proscribed by Penal Code section 288, subdivision (b). The second amended petition contained two separate allegations of forcible lewd or lascivious conduct by the minor.

The differences in juvenile delinquency law between informal supervision and probation are summarized in Seiser & Kumli, Seiser & Kumli on California Juvenile Courts Practice and Procedure (Matthew Bender 2013) (Seiser & Kumli). "The underlying purpose of . . . informal supervision is to avoid a true finding of criminal culpability, which would result in a criminal record for a minor." (*Id.*, § 3.35[3][c][iv], p. 3-75; accord, *In re Adam R.* (1997) 57 Cal.App.4th 348, 352.) "The court may not make a true finding on the allegations in the petition and subsequently order informal supervision. [Citation.] The purpose of informal supervision is to avoid the consequences of a sustained petition. To this end, if a minor successfully completes informal supervision, the petition is dismissed." (Seiser & Kumli, *supra*, § 3.35[3][c][iv], p. 3-74.)

In *Derick B. v. Superior Court*, *supra*, 180 Cal.App.4th at page 304, the court stated that informal supervision generally is given "only to first-time minor offenders who are alleged to have committed no more than misdemeanors or infractions." The treatise quoted above questions that statement, however, stating, "many courts place minors under the age of 14 on informal supervision for felony offenses when they would be eligible for [deferred entry of judgment] if they were over the age of 14." (Seiser &

Kumli, *supra*, § 3.35[3][c][v], p. 3-76.) The minor here, however, is not in so favorable a position, since deferred entry of judgment, with its benefits of eventual "dismiss[ing of] the charge or charges against the minor" (Welf. & Inst. Code, § 791(a)(3); accord, *id.* § 793, subd. (c)) and sealing of the records (*id.* § 793, subd. (c)), is not available to minors who, like the minor here, are alleged to have engaged in the conduct described in subdivision (b)(6) of Welfare and Institutions Code section 707, namely conduct that if committed by an adult would be punishable under subdivision (b) of Penal Code section 288. (Welf. & Inst. Code, § 790, subd. (a)(2).)

The record reveals the basis for the juvenile court's decision to order the imposition of formal probation instead of informal supervision.

At the October 10, 2012 hearing on the two Penal Code section 288, subdivision (b) allegations that were contained in the first amended petition, the minor's counsel moved to have her placed on informal supervision. While conceding that the minor had engaged in "very serious conduct," minor's counsel argued, "as the court is aware, Bianca has been before the court . . . [for] a significant period of time. [¶] I think that everything that has happened between now and then supports a finding of informal supervision. She has always come to court on time. She attends school. She's doing very well at school. She lives at a new home from the home she was residing in at the time these incidents occurred. [¶] I've been very impressed with the steps her mother immediately took to address the nature of the allegations in the petition. [¶] Bianca is much more closely supervised. The computer is password protected. And her mother is a very responsible parent, who wasn't aware of the conduct that was occurring in the petition." "I think that [moving to a] new home has made a huge amount of difference," counsel added. "I think it's a much more positive, supportive environment."

The minor's counsel stated that informal supervision would have a similar effect on the minor as other plausible forms of disposition. "I think whether Bianca was made a ward of [the] juvenile court or placed on informal supervision, the level of supervision

would be substantially the same.  And I believe that her needs can be best addressed by the least restrictive alternative, and I agree with probation that that is informal supervision."

The probation officer told the juvenile court and the parties that he also thought informal supervision would be sufficient corrective action and that formal probation was not needed.  "First of all, when looking at the course of conduct, yes, it is alarming.  But . . . it has been noted in the psychological evaluations that perhaps this was . . . experimentation due to a sexual curiosity as she was going through that time in life in which people become aware of themselves and aware of sexuality.

"[¶] . . . [¶]

". . .  [S]he has been in therapy for over a year.  And in that therapy, . . . one of the primary focuses that they've been working on, is . . . formulating that plan of action to avoid further offenses.

"Additionally, her parents have taken steps, proactive steps, in order to ensure that her interaction with her siblings or others is limited.  It is monitored.  . . .  [T]hey have taken steps to limit her access to the computer, which was part of her behavior.  These steps show that she is in the process of rehabilitation.

" . . . I believe it was Dr. Land [the psychologist mentioned above] who suggested that Bianca be involved in pro-social activities.  It's my understanding she is now involved in such.  She's involved in cheerleading, as well as in" the "Girls for Change program. . . .

"[¶] . . . [¶]

". . . I believe that Bianca is going through a period of rehabilitation, which is our goal.  And it is being done in such a way, not even with probationary interaction.  It is happening already.  [¶]  Therefore, when I'm looking what the level of supervision would be necessary, I believe" informal supervision would suffice.

The probation officer acknowledged that the District Attorney's office was not "asking for much. They're just asking that she be placed on formal probation so that she would have an extended period of observation, which I don't disagree with. [¶] But the question I raise is, is it necessary? Is it necessary to have her on probation for years when we can monitor for a shorter period of time? [¶] I have suggested to, I believe, both counsel that we could come back for periodic reviews. I understand that . . . [the] deputy district attorney['s] . . . main concern is individuals on informal supervision don't generally get the supervision of kids who are placed on formal wardship receive. [¶] I assured him of being aware of this case, being aware of the seriousness and the concerns of all, that I would assure that a supervision—or make sure that she's supervised to a level that would be on par with anyone of regular or maximum-risk-to-reoffend, have her regularly seen. [¶] But I believe that [with] the support of her parents, the support of counseling, [and] the support of pro-social activities [she] does not require an extended period of observation. And that is why I still believe that informal supervision is the least restrictive, but appropriate, level of supervision for this minor."

The deputy district attorney disagreed with the probation officer and the minor's counsel. "[T]he code is clear," she argued, "that [Welfare and Institutions Code section] 707(b) cases are not IS [informal supervision] cases." "The 707(b) cases are the most serious cases. They're generally the ones involving violence and the ones involving sex offenses. And I think the code is very clear that the court should find extraordinary circumstances that differentiate one case of [conduct proscribed by Penal Code section 288, subdivision (b)] from another case if the court's going to proceed with IS with those charges.

". . . [The probation officer] wants IS, but then he's saying we'll elevate IS to basically be like wardship, and we'll watch her more closely, and we'll do these wardship-like things under IS. [¶] I think it's the exact reasons why these wardship-like things are necessary, that IS is not appropriate. There has been no real reason, no clear

reason, why the minor's case should be treated differently from other [Penal Code section 288, subdivision (b)] cases."

"[W]hen force is used," the deputy district attorney continued, "I think that removes it from the simple experimentation that [the probation officer] was talking about."

"[T]he People are not asking for custody time," she commented; "we're not asking for any particular resolution. We're simply asking that she be made a ward and admit to what she did."

The deputy district attorney specified that an informal supervision disposition would result in the case eventually being dismissed, leaving an inadequate record given the minor's possible future dangerousness. "I think that if she has IS, she doesn't make an admission, her case is dismissed like it never happened, it's a very different situation than when she admits what she has done wrong, and takes responsibility for it and moves forward from that position. [¶] I think it's important that she take responsibility, considering the serious nature and the effect on these 2 victims. [¶] It is exactly the potential dangerousness of these kinds of crimes that the code says IS is . . . not appropriate in those sorts of cases."

The deputy district attorney summarized: "I am concerned that if the minor does not admit formally in court, does not take responsibility for her actions and does not proceed on formal supervision that her potential rehabilitation may be hindered; but I'm also concerned for the future safety of the community."

In response, the minor's counsel questioned the need for a juvenile delinquency record. "I think what they [the People] would like to have is for Bianca to have a juvenile record. [¶] I don't think that's something that advances community safety or advances her rehabilitation."

"[I]n terms of there being no record," the minor's counsel continued, "there is more of a record in informal supervision than DEJ [deferred entry of judgment], because

the records do not get destroyed unless the formal sealing process happens, which doesn't happen until a person turns 18 and successfully completes probation."

The juvenile court addressed the minor directly, saying, "I have to decide a legal issue, which has really very little to do with you personally." "I am very aware of how hard you've worked."

The juvenile court then turned to the parties' counsel, noting that "it's very unusual to have 2 [Welfare and Institutions Code section] 707(b) offenses with a recommendation for IS." After more discussion, the case was continued to another day so the court could think further about a suitable disposition.

When court reconvened two weeks later, on October 24, 2012, the deputy district attorney reiterated her desire that the record of the minor's misconduct not disappear, as she asserted would happen with informal supervision. "I think it is important that we have a documented history of what occurred here. And I also think that it's important that these charges do not simply get dismissed as if they never happened. Bianca would not need to admit. And essentially in 6 months it would be as if this never occurred. That is my primary concern with informal supervision."

The juvenile court ruled: "a [Welfare and Institutions Code section] 707(b) offense is not appropriate for IS at this time; but I do believe that the 6 months without wardship would be appropriate." A week later, on November 1, 2012, that became the disposition.

In sum, the juvenile court fashioned the disposition it thought would be in the minor's and community's best interest, agreeing with the district attorney's request for formal probation, but also agreeing with the minor's counsel that wardship was not necessary.

At oral argument, the minor emphasized a point she raised in her briefs on appeal: a trial court abuses its discretion in making a ruling if it fails to follow the legal principles that govern that ruling. She maintains the juvenile court failed to understand it was to

choose the least restrictive alternative that yet would ensure public safety, which she asserts would be informal supervision. That was, however, the precise issue with which the parties and the juvenile court wrestled: how to acknowledge the progress made by the minor and yet protect the public (in particular younger girls) from forcible sexual behavior the minor might revert to. The court held a hearing and took the matter under submission. After considering the alternatives, the court chose a less restrictive alternative (forgoing wardship or a commitment to a juvenile facility) that in its view would ensure public safety. The court understood its task.

The minor relies on *In re L.S.* (1990) 220 Cal.App.3d 1100, for the proposition that the court was required to order informal supervision if doing so would still protect public safety. That case involved a commitment to the then-denominated California Youth Authority, with its severe regimens and locked facilities. The court commented that statutory and case law "requires proper consideration be given to less restrictive programs before a commitment to CYA is made." (*Id.* at p. 1105.) It also faulted the juvenile court in that case for acting without having before it an adequate account of L.S.'s "personal, social and behavioral information." (*Ibid.*) Here, by contrast, the juvenile court had a wealth of information about the minor's background, character, and psychology. Moreover, as noted above, *In re L.S.* only requires that consideration be given to *less* restrictive programs, not that the *least* restrictive one must be chosen if public safety is not compromised. The juvenile court here considered dutifully informal supervision as an option, which was the least restrictive alternative available to the minor. Thus, the court did not err by failing to give consideration to less restrictive programs.

We turn to the question of abuse of discretion generally. The juvenile court did not abuse its discretion in deciding that the minor should receive formal probation without wardship. First, the Legislature has directed that informal supervision is unavailable in the circumstances of this case absent strong reasons to allow it. Under this statutory governance, a decision to deny a motion for informal supervision will seldom be

an abuse of discretion.  The minor falls within the Legislature's statutory preference set forth in Welfare and Intuitions Code section 654.3 to deny informal supervision when a petition alleges a Penal Code section 288, subdivision (b) offense.  It would take extraordinary circumstances for the court below to have ruled differently and it would require extraordinary justification for this court to countermand the lower court's decision.  (See *People v. Carmony* (2004) 33 Cal.4th 367, 378 [When " 'the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' "].)[2]

And second, the probation officer said that the minor would be treated with exceptional caution and heightened monitoring under informal probation in light of the seriousness of her conduct.  The negotiations following the October 24, 2012 hearing plainly focused on the type of record the minor would be left with—thus the restatement of the two Penal Code section 288, subdivision (b) allegations in the second amended petition filed in November 1, 2012, making informal supervision very difficult to obtain.[3] The juvenile court could reasonably conclude, as the deputy district attorney argued, that

---

[2] We recognize that the statute relies on an allegation, not necessarily a finding, of certain forms of serious misconduct to disfavor informal supervision.  In theory, this could lead to a peculiar result, i.e., a petition could allege a serious form of misconduct, there could be no evidence of it, and the juvenile court could find it did not occur but sustain a petition with regard to something not within the statutory scheme; and yet the mere presence of unfounded allegations would make informal supervision difficult to obtain.  We are not faced with that consideration here, however, as the forcible nature of the minor's lewd or lascivious acts is evident from the incidents described in the record.

[3] These two allegations were dismissed before the juvenile court sustained the second amended petition.  But as noted earlier, Welfare and Institutions Code section 654.3 makes informal supervision more difficult to obtain whenever "A petition alleges that the minor has violated an offense listed in subdivision (b) of Section 707."  Although they were dismissed, the forcible lewd or lascivious acts were alleged in the second amended petition.

informal supervision ran the risk of leaving an inadequate record of the minor's conduct if she posed a further risk to the community. Such considerations, even if not articulated expressly by the court, impliedly informed its decision, because they were emphasized in the hearings leading up to the disposition. We cannot say the court ignored them. Nor does it appear the court misunderstood the scope of its discretion. It said that informal supervision was not a proper disposition, not that it was a legally unavailable one. Thus, the minor's claim that the court abused its discretion when it imposed formal probation instead of informal supervision is without merit.

Finally, in reviewing the record, we note inaccuracies in the Juvenile Detention Disposition Report, dated November 2, 2012, and in confidential communications to third parties on or about that same date. The disposition report inaccurately states that the minor admitted to, and the court sustained, the allegations concerning subdivision (b) of Penal Code section 288. Evidently based on this inaccurate report, the superior court sent confidential notices to a school superintendent and the county sheriff erroneously informing them that the minor had engaged in conduct prohibited by subdivision (b) of Penal Code section 288. (The disposition report and notices accurately advised of the conduct prohibited by subdivision (a) of section 288.) We will direct the juvenile court to take corrective action regarding the report and the communications sent to third parties based on the inaccurate reports.

## DISPOSITION

The dispositional order is affirmed. The juvenile court is to take corrective action regarding the Juvenile Detention Disposition Report and communications to a school superintendent and the county sheriff so that these communications accurately reflect the court's findings.

_____
Márquez, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Premo, J.